IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KENNETH W. FOLAND,

        Plaintiff,　　　　　　　　　　　　No. CV-10-1495-HZ

  v.

MICHAEL J. ASTRUE, Commissioner,　　　　OPINION & ORDER
Social Security Administration,

        Defendant.

Alan Stuart Graf
316 Second Road
Summertown, Tennessee 38483

    Attorney for Plaintiff
///
///
///
///
///
///
///

1 - OPINION & ORDER

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Benjamin J. Groebner
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Kenneth Foland ("Foland") brings this action for judicial review of the Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § § 401-33, and Supplemental Security Income ("SSI") payments under Title XVI of the Act. 42 U.S.C. §§ 1381-83f. I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the following reasons, I AFFIRM the Commissioner's decision.

## BACKGROUND

     Born in 1969 (Tr. 102), Foland has a general equivalency degree (Tr. 129), and reports past work as a line cutter, laborer, forest firefighter, cook, builder, auto mechanic, and assistant restaurant manager. Tr. 123. He initially alleged disability since June 30, 1999, due to a back impairment, carpal tunnel syndrome, depression, a cardiac pacemaker, and "numerous heart problems." Tr. 122.

     The Commissioner denied Foland's applications initially and upon reconsideration (Tr. 72-

88), and an Administrative Law Judge ("ALJ") held hearings on February 15, 2007, June 13, 2007, and August 6, 2007. Tr. 411-74. The ALJ found Foland not disabled on August 20, 2007. Tr. 18-28. Foland subsequently appealed to this court, which remanded the matter for further proceedings on November 20, 2009. Tr. 495.

The ALJ held a subsequent hearing on September 20, 2010 (Tr. 794-814), and again found Foland not disabled on October 7, 2010. Tr. 478-89. Foland appeals that decision.

## SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's

3 - OPINION & ORDER

RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); Yuckert, 482 U.S. at 142; Tackett, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. Yuckert, 482 U.S. 137, 146 n5; Tackett, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g); Tackett, 180 F.3d at 1099.

## THE ALJ'S DECISION

The ALJ found Foland's "status post pacemaker implant" and "chronic cervical and lumbar strain status post motor vehicle accident" "severe" at step two in the sequential proceedings. Tr. 481. The ALJ found that these impairments did not meet or equal a disorder listed in the Commissioner's

regulations at step three, and found that Foland retained the RFC to perform light work. Id. He additionally limited Foland to standing and walking "two out of eight hours (cumulatively not consecutively)," with no more than occasional contact with the public. Id. The ALJ found that this RFC did not allow Foland to perform his past relevant work (Tr. 487), but found that he could perform work in the national economy at step five. Tr. 488. The ALJ therefore found Foland not disabled under the Commissioner's regulations. Tr. 489.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 US 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

2003) (citing same).

## DISCUSSION

Foland asserts that the ALJ erroneously evaluated (1) his credibility; (2) the opinions of a treating nurse practitioner and an examining physician; and (3) the lay witness testimony. He subsequently asserts that the ALJ should have found him disabled.

### I.     Credibility

Foland specifically challenges the ALJ's findings regarding his credibility and his activities of daily living, drug and alcohol use, and medical record. Pl.'s Opening Br. 14-18.

#### A.     Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing

inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.

### B.     Analysis

The ALJ found Foland not "entirely credible," citing his activities of daily living, drug use, and medical record. Tr. 486. Foland challenges each of these.

#### 1.     Activities of Daily Living

The ALJ found Foland's activities of daily living inconsistent with his reported limitations, citing Foland's ability to care for his children while his wife was absent on military duty, prepare simple meals, build shelves for a hobby, and perform yard work. Tr. 486. The ALJ also cited the lay witness testimony stating that Foland could lift 45 to 50 pounds, walk thirty minutes to one hour before requiring rest, mow the lawn with a riding mower, shop, watch his children, and prepare occasional meals. Tr. 487.

Foland argues that the Social Security Act does not require a claimant to be utterly incapacitated to receive disability benefits, and subsequently asserts that the ALJ "based his findings on his own guess-work" regarding Foland's functioning. Pl,'s Opening Br. 16.

While a claimant need not "vegetate in a dark room," to be found disabled, Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may cite a claimant's activities of daily living in his credibility analysis. Smolen, 80 F.3d at 1284. The ALJ may specifically cite such activities in finding them inconsistent with a claimant's allegation of total disability. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1196 (9th Cir. 2004).

The record directly reflects the ALJ's findings regarding Foland's reports of his daily activities, including preparing food for his children and supervising them (Tr. 170), using a riding lawn mower, vacuuming (Tr. 171), weekly shopping (Tr. 172), watching television and gardening, having guests over for barbeques, and attending school functions. Tr. 173. The record also supports the ALJ's finding regarding activities described by Christine Foland, such as caring for their children (Tr. 144-45), using a riding lawn mower (Tr. 146), shopping (Tr. 147), and watching television. Tr. 148.

This court must defer to an ALJ's interpretation of a claimant's daily activities, even where other interpretations more favorable to the claimant may arise. Rollins v. Massinari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's finding that Foland's reported daily activities were inconsistent with his allegation of disability, and detracted from his credibility, is therefore affirmed.

### 2. Drug and Alcohol Use

The ALJ found Foland's credibility "not supported by testing positive for methamphetamines in July of 2010, and his testimony that he still drinks occasionally despite prior treatment for alcohol abuse." Tr. 487. Foland makes three challenges to the ALJ's citation to his drug and alcohol use.

Foland first argues that this court cannot determine whether the ALJ made an "arbitrary" finding regarding his drug and alcohol use. Pl.'s Opening Br. 17 (citing Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)). Foland does not explain this argument, and provides no on-point citation. His indicated citation discusses an ALJ's limited obligation to recontact a medical source, the relevant standards addressing credibility determinations, and the role of inconsistent statements regarding drug use in assessing credibility. Thomas, 278 F.3d at 958-59. This authority does not establish that this court is unable to address Foland's drug use, and the argument therefore fails.

8 - OPINION & ORDER

Second, Foland argues that the ALJ improperly noted that he drinks beer "despite prior inpatient treatment for alcohol abuse," asserting that no inference flows from that citation. Pl.'s Opening Br. 17. The Commissioner does not answer this argument. This court may affirm an ALJ's decision based upon "inferences reasonably drawn from the record." Batson v. Comm'r, Soc. Sec., 359 F.3d 1190, 1193 (9th Cir. 2004), but may not substitute its own reasoning for that of the ALJ. Bray, 554 F.3d at 1225-26. The ALJ apparently inferred that alcohol use is inconsistent with most treatment regimes addressing alcoholism. However, the ALJ provided no explanation, and this court cannot now determine what treatment plan Foland participated in. Therefore, the ALJ's reasoning on this point is not sustained.

Finally, Foland asserts that he did not offer any conflicting testimony regarding his drug use because, although he tested positive for methamphetamine use, he maintained to medical providers and the ALJ that he did not use methamphetamines. Pl.'s Opening Br. 17-18. The record shows that Foland argued his sample was tampered with when confronted with a drug test result that was positive for methamphetamines. Tr. 806. Foland's indicated citation explains that a claimant's conflicting testimony regarding his drug and alcohol use may support an inference that the claimant is not credible. Thomas, 276 F.3d at 959. Foland's testimony was contrary to the test result, and thus constitutes a sufficient contradiction to support a finding that Foland was not credible. The ALJ's findings on the matter are affirmed.

### 3. Medical Record

Finally, the ALJ found that the medical record inconsistent with Foland's subjective complaints. Tr. 486. Foland asserts that the medical record shows that he could reasonably be expected to experience symptoms associated with his back impairment, and, therefore, the ALJ

erroneously cited the medical record in his credibility findings.

Foland misconstrues the relevant standard. As Foland correctly states, once a claimant establishes a medically-determinable impairment, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036. However, analysis under this standard may cite a claimant's medical record in conjunction with other credibility findings. Smolen, 80 F.3d at 1284; Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47. Foland points to instances in the record showing degenerative changes in his spine, but also cites his own reports regarding his back pain. Such citation does not establish that the ALJ improperly cited the medical record in conjunction with other credibility findings. The ALJ's citation to the medical record is affirmed.

### C. Credibility Conclusion

In summary, the ALJ's citations to Foland's activities of daily living, drug use, and medical record are based upon the record and appropriate legal standards, except as noted regarding Foland's alcohol treatment. This court may affirm an ALJ's overall credibility decision even when it does not uphold all the ALJ's reasons. Batson, 359 F.3d at 1197. The ALJ's credibility conclusion is therefore affirmed.

## II. Medical Source Statements

Foland argues that the ALJ improperly evaluated the opinions of treating Nurse Practitioner Bill Johnson, and examining physician Steven Vander Waal, M.D.

### A. Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to

the opinion of a treating physician than that of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. Id. If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. Id. at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.   Nurse Practitioner Bill Johnson

Foland challenges the ALJ's evaluation of Nurse Practitioner Johnson. He specifically argues that the ALJ should have given greater weight to the Nurse Johnson's December 12, 2006, opinion. Pl.'s Opening Br. 20.

#### 1.   Standards: Nurse Practitioners

The Commissioner's regulations instruct that nurse practitioners are evaluated as "other" medical sources. 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Their opinions are relevant to the extent they describe Foland's symptoms and functionality. Id. The Commissioner additionally issued an Administrative Ruling addressing evaluations of such "other" sources, and specifically instructs that an ALJ consider factors such as (1) how long the source has known the claimant and how frequently he sees the claimant; (2) the consistency of the "other" source opinion with other evidence; (3) the degree to which the source presents relevant evidence to support her opinion; (4) how well the source explains his opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment; and (6) any other factors that tend to support the source's opinion. SSR 06-3p at *4 (available at 2006 WL 2329939). Opinions of "other" sources may

11 - OPINION & ORDER

therefore reflect the source's judgment about issues addressed in the claimant's medical record from "acceptable" medical sources, including, "symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." Id. at *5.

### 2. Nurse Johnson's Opinion

Nurse Johnson treated Foland between February 17, 2004 (Tr. 246), and October 15, 2006. Tr. 325. During this time, Nurse Johnson assessed acute and chronic lower back pain, depression, and gastro-esophageal reflux disease. Tr. 246, 325, 392-93. On June 14, 2005, Nurse Johnson wrote a chart note stating that Foland was "unable to work at this time." Tr. 394. He also completed a form submitted by Foland's attorney on December 12, 2006, again describing Foland's limitations. Tr. 399. Here he stated that Foland would "probably" miss two or more days of work per month, noted Foland's reported pain, and wrote, "sedentary work would be difficult because of [Foland's] personality and attention span." Tr. 399. Nurse Johnson articulated no other work-related limitations.

### 3. Analysis: Nurse Johnson

The ALJ discussed Johnson's June 2005 and December 2006 statements. Tr. 484-85. Each is discussed in turn.

#### i. June 14, 2005, Chart Note

The ALJ first found Nurse Johnson's June 2005 chart note based upon Foland's self-reports. Tr. 484. The record shows that Nurse Foland accepted Foland's reports of disabling pain. Tr. 246, 325, 392-93. The ALJ may reject a medical source opinion predicated upon the report of a claimant properly found not credible, Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001), and this reasoning is therefore affirmed.

12 - OPINION & ORDER

The ALJ also found Nurse Johnson's opinion "inconsistent with objective findings which indicate that the claimant's back pain is more mechanical and the disc herniation was not clearly related to his pain." Tr. 484. The ALJ may reject a nurse practitioner's opinion that is inconsistent with other evidence. SSR 06-3p at *4 (available at 2006 WL 2329939). The ALJ's indicated citation shows that, on November 29, 2004, treating physician Dr. Hill wrote, "The low back is stiff but not really tender to percussion. Straight leg raising is negative. Ankle and knee reflexes are brisk. I think he primarily has mechanical lower back pain and that the herniated disc is not clearly related to this." Tr. 534. Further, on October 2, 2002, emergency room physicians diagnosed "mechanical" lower back pain (Tr. 248), and an April 4, 2008, MRI study was "without evidence of herniation." Tr. 659. The ALJ's reasoning addressing Nurse Johnson's opinion pertaining to the source of Foland's back pain is thus based upon the record and the proper legal standard. This finding is affirmed.

### ii.     December 12, 2006, Opinion

The ALJ then rejected Nurse Johnson's December 12, 2006, opinion because it was not based upon a physical examination and without support. Tr. 485. The record shows that Nurse Johnson completed the form without reference to clinical observation or evaluation, and provided little explanation for his conclusions. Tr. 399. The ALJ may reject a medical source opinion that is brief, conclusory, and inadequately supported by clinical findings. Bayliss, 427 F.3d 1216. The ALJ's findings are therefore affirmed.

### C.    Examining Physician Steven Vander Waal, M.D.

Foland also asserts that the ALJ improperly rejected limitations assessed by examining physician Dr. Vander Waal. Pl.'s Opening Br. 21.

13 - OPINION & ORDER

Internist Dr. Vander Waal evaluated Foland on April 12, 2007. Tr. 400-09. Dr. Vander Waal noted Foland's history and performed a clinical examination. Id. He concluded that Foland had "chronic neck and back pain without definitive pathology on previous evaluations. He exhibits considerable pain related behavior and [I] suspect there is a strong psychological component to this pain." Tr. 401.

Dr. Vander Waal characterized Foland's work restrictions as "self-imposed." Id. He completed a form indicating that Foland could occasionally lift and carry up to twenty pounds, and never lift or carry more than twenty pounds. Tr. 404. Dr. Vander Waal wrote that this restriction was "based on his reported symptoms," and did not cite any clinical evidence supporting his opinion. Id. He also wrote that Foland could sit, stand, or walk fifteen minutes at a time, did not require a cane, and could walk 60 feet. Tr. 405. Dr. Vander Waal endorsed additional lifting and manipulative restrictions, again stating this was "based on [Foland's] symptoms." Tr. 406. Finally, Dr. Vander Waal indicated that Foland could "occasionally" tolerate exposure to various workplace environmental conditions. Tr. 408.

The ALJ discussed Dr. Vander Waal's opinion in some detail, noting Dr. Vander Waal's description of Foland's reported symptoms and his clinical findings. Tr. 485. The ALJ concluded, "Limited weight is given to Dr. Vander Waal's residual functional capacity assessment. He clearly based his assessment on the claimant's reported symptoms and limitations rather than objective findings." Id. The ALJ subsequently stated that Foland's subjective complaints were inconsistent with the objective findings of Dr. Vander Waal and other medical sources. Tr. 485-86.

Dr. Vander Waal repeatedly stated that the limitations he ascribed to Foland were based upon Foland's reports. Tr. 404, 406. As noted, the ALJ may reject a physician opinion predicated upon

14 - OPINION & ORDER

reports of a claimant properly found not credible. Tonapetyan, 242 F.3d at 1149. The ALJ's reasoning was consistent with this standard and is therefore affirmed.

### D. Conclusion: Medical Source Statements

In summary, Foland fails to show reversible error in the ALJ's analysis of the opinions of Nurse Johnson or examining physician Dr. Vander Waal. The ALJ's findings are therefore affirmed.

## III. Lay Testimony

Ellis also asserts that the ALJ erroneously evaluated lay testimony submitted by his wife, Christine Foland. Pl.'s Opening Br. 18.

### A. Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); 416.913(d); 416.945(a)(3); Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. Bruce, 557 F.3d at 1115; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

### B. Analysis

Christine Foland completed two "third party report" forms submitted to the record. She completed the first form on March 28, 2004 (Tr. 144-52), and the second on August 3, 2004. Tr. 180-88. On the first form, as discussed above, Christine Foland stated that Foland "stays home," watches television (Tr. 144), watches his children, "prepares the occasional meal," uses a riding lawn mower, and shops. Tr. 148. Christine Foland also stated that Foland has difficulty putting on shoes

15 - OPINION & ORDER

and socks (Tr. 145), rarely goes places, and is easily angered. Tr. 148. She endorsed limitations in Foland's abilitiy to lift, squat, bend, stand, and walk. Tr. 149.

On the second form, Christine Foland again stated that Foland spends his day at home (Tr. 180), cares for his children, mows the lawn, vacuums (Tr. 183), shops (Tr. 183), watches television, gardens, participates in family barbeques, and attends school events. Tr. 184. She stated that Foland does not like people and prefers to stay home. Tr. 184. Finally, Christine Foland endorsed limitations in Foland's ability to lift, squat, bend, stand, walk, sit, kneel, hear, climb stairs, and get along with others. Tr. 185.

The ALJ reviewed Christine Foland's testimony, and concluded:

> While I find Mrs. Foland's testimony generally credible, the claimant, by Ms. Foland's account, was able to function successfully as a househusband in the caring of two small children by himself from February of 2001 until April of 2003. Clearly then, during the years his wife was on active [Army] duty, he must have been successful in household chores, cooking and feeding his children, paying bills, grocery shopping, and so on, during her considerable absences. The claimant's activities of daily living during that time would suggest that his limitations prior to the date last insured are not as severe as he has alleged. Tr. 486.

The ALJ also found Christine Foland's statements regarding Foland's alleged manipulative limitations inconsistent with the medical record pertaining to his grip strength. Id.

Foland first asserts that the ALJ's citation to his activities is unsupported by the record, and is therefore insufficient. Pl.'s Opening Br. 19. Here Foland suggests that his activities are more limited than the ALJ found. Id. As discussed above, this court must defer to an ALJ's interpretation of a claimant's activities of daily living. Rollins, 261 F.3d at 857. The ALJ's citation to Foland's activities of daily living therefore constitutes a germane reason for rejecting the limitations expressed

by Christine Foland.

Foland also asserts that the ALJ improperly found Christine Foland's testimony regarding his hands inconsistent with the medical record. Pl.'s Opening Br. 19. The ALJ may reject lay testimony that directly conflicts, or is inconsistent with, the medical evidence. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ may not reject lay testimony merely because it is uncorroborated, or unsupported, by the medical evidence. Bruce, 557 F.3d at 1116; see also Glover v. Astrue, No. 10-824, slip. op. at 15 (December 6, 2011).

Here, the ALJ noted that the medical record showed that Foland had "good" grip strength and no motor or sensory deficits in his hands. Tr. 486. The record supports the ALJ's finding. Tr. 379, 401, 691, 697. The ALJ's conclusion that Christine Foland's testimony was inconsistent with this evidence is based upon the record and the proper legal standards, and is therefore affirmed.

### C. Conclusion: Lay Testimony

In summary, the ALJ properly rejected Christine Foland's testimony, and his conclusion on the matter is affirmed.

## IV. Step Five Findings

Finally, Foland asserts that the ALJ's erroneously found that he could perform work in the national economy at step five in the sequential analysis. Pl.'s Opening Br. 24.

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the Dictionary of Occupational Titles ("DOT"), or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the

vocational expert must include all properly supported limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

Foland fails to show that the ALJ erroneously evaluated the limitations described in the evidence discussed above. The ALJ need not include limitations properly rejected in his questions to the vocational expert at step five, id., and therefore did not err in omitting such limitations from his questions to the vocational expert. The ALJ's step five findings are therefore affirmed.

## CONCLUSION

In conclusion, Foland fails to show that the ALJ improperly evaluated his testimony, the medical evidence, and the lay testimony. He also fails to show that the ALJ made improper step five findings. The ALJ's decision is based upon the record and the correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

Dated this   23rd   day of December, 2011.


　　　　　　　　　　　　　　　　 /s/ Marco A. Hernandez
　　　　　　　　　　　　　　　　Marco A. Hernandez
　　　　　　　　　　　　　　　　United States District Judge

18 - OPINION & ORDER